# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kimberly Canfield,                :
             Petitioner      :
                            :
            v.             :    No. 664 C.D. 2019
                            :    Submitted: September 13, 2019
Workers' Compensation Appeal  :
Board (Western Power Sports, Inc.),  :
             Respondent   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: January 13, 2020**

Kimberly Canfield (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that affirmed the Decision of a Workers' Compensation Judge (WCJ) denying Claimant's Claim Petition. On appeal, Claimant argues the WCJ's Decision was not supported by substantial evidence and that, at a minimum, the Claim Petition should have been granted for a work-related head contusion, which she asserts Western Power Sports, Inc.'s (Employer) medical expert acknowledged. Upon review, we affirm.

## I. Background

### A. Claim Petition

On December 21, 2017, Claimant filed the Claim Petition alleging that, on November 2, 2017, she sustained a work-related injury in the nature of

"concussion/post-concussion syndrome" as a result of striking "her head on an exposed bolt after picking something up off the ground." (WCJ Decision, Finding of Fact (FOF) ¶ 1; *see* Claim Petition, Reproduced Record (R.R.) at 2a.) Claimant sought partial disability benefits from November 2, 2017, through November 8, 2017, total disability benefits from November 9, 2017, and ongoing, and medical benefits. Employer filed an answer denying the Claim Petition's material allegations.

The matter was assigned to a WCJ, who held hearings at which the parties presented testimonial and documentary evidence. Claimant testified live before the WCJ and offered the deposition testimony of her medical expert, Edward J. Purzycki, Ph.D., a board-certified psychologist (Claimant's Psychologist). Employer presented the deposition testimony of Richard H. Bennett, M.D., a board-certified neurologist (Employer's Neurologist).

### B. Claimant's Evidence

In support of her Claim Petition, Claimant testified as follows.[1] She worked for Employer for over three years, most recently as a packer. On November 2, 2017, Claimant hit the left side of the crown of her head on an exposed bolt on a shelf at work. Claimant did not strike her head with "extra force" and did not lose consciousness, but did experience pain. (FOF ¶ 2c.) She did not leave to seek medical treatment but finished her shift. Claimant contacted Employer the following day, on November 3, 2017, and informed her Supervisor that she had a severe headache, pain, and nausea, and was going to seek medical treatment. Supervisor sent Claimant to WorkNet, which placed Claimant on work restrictions that were

---

[1] Claimant's testimony is summarized in Finding of Fact 2, and the transcript of that testimony is found at pages 24a-37a of the reproduced record.

2

communicated to Employer. Although Claimant was to return to WorkNet the following Friday, Employer instructed her to go sooner. Claimant did so, and the WorkNet provider released her to full-duty work, indicating that she was "100 percent." (R.R. at 32a.) However, Claimant indicated that she then sought treatment from her family physician because she was still in incredible pain, and that this physician removed her from work initially for three days, and then completely. Claimant continued to experience head pain, nausea, tiredness, weakness, and lack of interest and energy, which she related to the November 2, 2017 work incident. In addition to treating with her family physician, Claimant is treated by Claimant's Psychologist. Claimant acknowledged that she had a history of suffering from migraines for as long as she could remember, but believed her present condition was different. For example, her migraines would occur on the right side of her head and would be resolved by her taking Excedrin and laying down, but her current symptoms are left-sided, do not go away, and require her to lay down and rest in bed.

Claimant's Psychologist testified by deposition as follows.[2] He first saw Claimant on December 11, 2017, at which time she complained of mild nausea, feeling that she was swaying when she was in motion, visual impairments, feeling mentally foggy with words coming out differently than they used to, not sleeping well, drowsiness, and sensitivity to light and noise when she had headaches. Claimant's Psychologist took a history from Claimant regarding the work incident, including that she did not lose consciousness but did feel sick. He performed a physical examination of Claimant, which included a check for symptoms of a concussion and a cognitive assessment. Claimant's cognitive assessment was

---

[2] Claimant's Psychologist's deposition testimony is summarized in Finding of Fact 3, and the transcript of that deposition testimony is found at pages 56a-88a of the reproduced record.

3

normal, but based upon the results of the physical examination and Claimant's reported symptoms, Claimant's Psychologist diagnosed Claimant with "post-concussion syndrome and adjustment reaction with anxiety and insomnia." (FOF ¶ 3d.) He acknowledged Claimant's history of migraines, but explained that these were under control and managed. Claimant's Psychologist further explained that concussions can affect someone with preexisting migraine headaches, and "**can** result in protracted or prolonged recovery and this is how he is 'conceptualizing' what is happening in [Claimant's] case." (*Id.* ¶ 3e (quoting Claimant's Psychologist's Dep. at 9-10, R.R. at 61a-62a) (emphasis in original).) However, he also indicated "that many of the symptoms of post-concussion syndrome are similar, if not identical, to symptoms of migraine." (*Id.*) Claimant's Psychologist did not release Claimant to work on December 11, 2017.

He saw Claimant again on January 18, 2018, at which time Claimant stated she had good days and bad days, she had been discharged from her position, and her family physician had recommended she not drive due to her symptoms. Claimant again reported having headaches, some nausea, "fatigue[,] and other symptoms 'typically associated with migraines and/or concussion.'" (*Id.* ¶ 3g (quoting Claimant's Psychologist's Dep. at 11, R.R. at 63a).) Claimant's Psychologist maintained the same diagnosis and recommended that Claimant seek treatment from a specialist in headache management and possibly a prescription for medication that was known to help with headaches. Claimant's Psychologist subsequently saw Claimant on February 9, 2018, March 9, 2018, and April 19, 2018, at which time Claimant continued to complain of sleep issues and depression or anxiety. She sometimes complained of headaches and nausea. He explained that depression can be consistent with post-concussion syndrome, but that there are also environmental

factors that can cause it as well. Here, Claimant's Psychologist noted that Claimant's father passed away at the end of March 2018 and she was experiencing stressors related to her finances, which he observed could have been environmental factors that caused her depression. Claimant's Psychologist did not release Claimant to work following the April 19, 2018 visit, which occurred the day before his deposition. When asked whether Claimant still suffered from post-concussion syndrome, Claimant's Psychologist answered:

> It's difficult to tell, because of the migraines and the impact that's having on her, whether these are still related to the concussion or are just a continuance of her migraines.
>
> That being said, it seems clear to me that the injury at work was the trauma that kind of unleashed the migraine propensity with her and regardless – and from a clinical perspective, we have to treat the symptoms.
>
> Right now, the dominant symptoms are these excruciating migraines. And whether we consider that as related to that event or just her migraine history, from our perspective it's not that critical that we understand that. We just have to treat the pain and the associated symptoms.

(*Id.* ¶ 3m (quoting Claimant's Psychologist's Dep. at 17-18, R.R. at 69a-70a).)

Claimant's Psychologist acknowledged that Claimant's initial treatment records indicated Claimant did not lose consciousness and there was no bruise to her head, but he believed those records may have indicated a laceration. He further agreed that Claimant's symptoms were entirely subjective and that his initial assessment reflected that Claimant's speech and cognitive assessment were normal, Claimant could relate information, and her thought process was coherent. According to Claimant's Psychologist, "with the trauma to the brain, there are 'metabolic

5

changes that occur' and that with a period of rest those metabolic changes can return to normal and then, with gradual increase in activity, a person is back to baseline." (*Id.* ¶ 3o (quoting Claimant's Psychologist's Dep. at 25, R.R. at 77a).) He acknowledged, however, that despite Claimant having rested since November 2, 2017, including days in bed, her symptoms continue to wax and wane.

### C. Employer's Evidence

Employer's Neurologist examined Claimant on March 13, 2018, and testified by deposition as follows.[3] Upon questioning, Claimant reported no loss of consciousness or laceration of the skin following the November 2, 2017 incident, but she indicated she developed increasing nausea and headache on that day. Claimant advised she had a history of migraine headaches, for which she took various medications, but which were different than the headaches she experienced after November 2, 2017. Claimant's physical examination was normal and revealed, among other things, no appearance of acute distress, she was alert and oriented to person, place, and time, she spoke clearly and fluently, she had no obvious cognitive impairments or deficits, and no difficulty with her coordination, balance, or walking. Thus, there were no objective abnormalities found. Similarly, Employer's Neurologist "found no neurological findings of concussion/post-concussion syndrome" and "Claimant's pattern of complaints did not support any concussion" because "concussions improve over time." (*Id.* ¶ 4c.) Further, the history of the November 2, 2017 incident "was not consistent with a severe enough brain injury to cause a concussion, and concussion symptoms tend to be worse almost immediately after the incident and are not delayed or become worse or more intense later." (*Id.*)

---

[3] Employer's Neurologist's deposition testimony is summarized in Finding of Fact 4, and the transcript of that deposition testimony is found at pages 139a-79a of the reproduced record.

6

Employer's Neurologist's review of Claimant's medical records, including the WorkNet records, revealed no indication that Claimant's condition at that time suggested she had a concussion or post-concussion syndrome. Based on his examination of Claimant and of her medical records, Employer's Neurologist found no objective evidence that Claimant suffered neurological impairment, a concussion, or post-concussion symptoms. If Claimant sustained any injury, it would have been a minor head contusion with no residual symptomology from which she had recovered. He explained "there was absolutely no evidence to support the diagnosis of concussion or post-concussion syndrome," (R.R. at 149a-50a), and no further neurological medical treatment or work restrictions were needed. Employer's Neurologist disagreed with Claimant's Psychologist's opinion, indicating there is no scientific evidence supporting the proposition that a person with migraine headaches was more susceptible to a head injury or had a longer recovery from such injury.

When asked on cross-examination to define "concussion," he explained that it meant a "transient loss or alteration of consciousness following a closed injury, which lasts about twenty minutes and that this is a loss or lapse of awareness or being confused/disoriented." (FOF ¶ 4h (citation omitted).) Post-concussion syndrome symptoms, Employer's Neurologist explained, are generally subjective, but are more intense after a concussion and constitute headaches, blurred vision, difficulty with concentrating and short-term memory, and balance issues. He explained that the phrase "closed head injury" used in Claimant's WorkNet records was a non-specific term used whenever a person hits his or her head and did not necessarily mean that a concussion occurred, merely that a person hit his or her head. Employer's Neurologist noted that Claimant reported to WorkNet that the impact to her head was "very minimal" and he agreed with WorkNet's notes, which reflected no

7

positive neurological findings that would be consistent with a concussion, that such impact was unlikely to have caused a concussion. (*Id.* ¶ 4i.) He further explained that the medication prescribed for Claimant was not used for concussion symptoms, but for tension headaches or depression.

At the January 31, 2018 hearing before the WCJ, there was a suggestion that Employer had issued a Medical-Only Notice of Temporary Compensation Payable (NTCP) that acknowledged a non-disabling, work-related injury in the nature of a head contusion. Claimant's counsel stated he "underst[ood] that the claim was being picked up under a medical-only NTCP," and Employer's counsel indicated Employer did not "dispute notice and that there was a head contusion." (R.R. at 22a-23a.)

### D. WCJ Decision

The WCJ reviewed the evidence and, based on that review, made credibility determinations. (FOF ¶ 5.) As to Claimant, the WCJ found her testimony regarding the events of November 2, 2017, including that she did not lose consciousness, and her subsequent treatment with WorkNet generally credible, and accepted that testimony as fact. (*Id.* ¶ 5a.) However, the WCJ found Claimant's testimony relating her ongoing condition to the November 2, 2017 incident not to be dispositive because of the WCJ's reliance on the medical expert evidence to ascertain whether that condition is causally related to that event and whether Claimant was disabled as a result.

As to Claimant's Psychologist, the WCJ found him "to be competent, but less than credible and persuasive in this dispute" due to, among other reasons, the lack of details regarding his examinations of Claimant and the results thereof that would support his diagnoses. (*Id.* ¶ 5b.) Rather, the results of the cognitive assessment of

8

Claimant he did discuss, the WCJ noted, were normal, as were Claimant's speech, eye contact, alertness, and thought processes. These findings, according to the WCJ, undermined Claimant's Psychologist's diagnoses, Claimant's reports to Claimant's Psychologist that she was mentally foggy and had problems speaking, and Claimant's Psychologist's credibility and persuasiveness. Last, the WCJ pointed out that when asked whether Claimant still suffered from post-concussion syndrome as of April 19, 2018, Claimant's Psychologist's response did not support the conclusion that she did, particularly where he testified that many of the symptoms of post-concussion syndrome are similar, if not identical, to migraine symptoms.

As to Employer's Neurologist, the WCJ found his testimony to be competent, credible, and persuasive, as it was straightforward, detailed, and was not shaken on cross-examination. The WCJ noted that Employer's Neurologist's testimony reflected a more extensive examination of Claimant than testified to by Claimant's Psychologist. Further, the WCJ observed that the lack of objective evidence supported Employer's Neurologist's opinions. The WCJ also explained that Employer's Neurologist gave a specific definition of concussion, which Claimant's Psychologist did not provide. Accordingly, to the extent the two experts' opinions differed, the WCJ credited Employer's evidence over Claimant's evidence. Thus, the WCJ accepted, as fact, the credited testimony of Employer's Neurologist that Claimant did not suffer a concussion or post-concussion syndrome as a result of the November 2, 2017 work incident.

Based on his credibility determinations and factual findings, the WCJ concluded Claimant had not met her burden of proving a causal connection between the November 2, 2017 work incident, the alleged concussion or post-concussion syndrome, or her alleged disability, i.e., loss of earning power. (WCJ Decision,

9

Conclusion of Law ¶ 3.) Therefore, the WCJ denied and dismissed the Claim Petition. Claimant appealed to the Board.

### E. Board Opinion

In her appeal, Claimant argued the WCJ's Decision was not supported by substantial evidence, challenging the WCJ's acceptance of Employer's Neurologist's testimony over that of Claimant's Psychologist and the reasons given for doing so. The Board concluded there was no error in the WCJ holding that Claimant did not meet her burden of proof on her Claim Petition because the WCJ did not credit her evidence that she sustained a disabling work injury in the nature of a concussion or post-concussion syndrome. According to the Board, the WCJ explained the reasons for rejecting Claimant's Psychologist's testimony as not credible and explained why he accepted Employer's Neurologist's contrary testimony, and this credibility determination was not subject to the Board's review. The Board held that because the WCJ accepted the latter's testimony that, at most, Claimant sustained a non-disabling mild head contusion and had recovered therefrom, Claimant could not meet her burden of proof on her claimed injury and disability. Claimant now petitions this Court for review.[4]

---

[4] This Court's "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

**II. Claimant's Appeal to this Court**

*A. Parties' Arguments*

Claimant argues[5] the Board erred in affirming the denial of the Claim Petition because the WCJ's reasons for crediting Employer's Neurologist over Claimant's Psychologist are not supported by substantial evidence. Claimant contends that, contrary to the WCJ's finding that Employer's Neurologist gave a very specific definition of concussion, he actually gave conflicting definitions of that term. According to Claimant, Employer's Neurologist defined concussion as "[] [a] transient loss or alteration of consciousness, [] [f]ollowing a closed head injury, [w]hich lasts about twenty minutes, [] [a]nd that this is a loss or lapse of awareness or being confused/disoriented," but he also defined it as "trauma to the skull or to the brain." (Claimant's Brief (Br.) at 24-25 (quoting R.R. at 156a-57a).) Because Employer's Neurologist did not give a very specific definition of concussion, the basis for the WCJ's crediting that opinion over Claimant's Psychologist's opinions is invalid.

Claimant also argues the Board erred in affirming the denial of the Claim Petition in its entirety because Employer's Neurologist opined that she sustained a head contusion as a result of the November 2, 2017 work incident. This error, Claimant contends, is perhaps due to the mistaken belief that Employer issued an NTCP acknowledging that a head contusion had occurred, and no such NTCP was ever issued. Notwithstanding that she did not raise this injury in her Claim Petition, Claimant asserts the WCJ should have granted the Claim Petition and ordered Employer to pay her medical bills, wage loss benefits, and litigation expenses because there was evidence to support the existence and work-relatedness of a head

---

[5] We have rearranged Claimant's arguments.

11

contusion. According to Claimant, the Board acknowledged the WCJ's acceptance of Employer's Neurologist's opinion that she "**sustained a non-disabling mild head contusion from which she had fully recovered**," but nonetheless affirmed because Claimant "was unable to meet her burden of proving that [s]he sustained a disabling work-related injury in the nature of a concussion or post-concussion syndrome." (Claimant's Br. at 21 (quoting Board Op. at 7).) Claimant objects to the Board's use of the term "non-disabling" because a work "injury" is not required to be disabling, as is reflected by the use of medical-only Notices of Compensation Payable. (*Id.*)

Employer responds that there was no error because Claimant did not meet her burden of proof where the WCJ rejected all of her evidence in support of the Claim Petition. According to Employer, Claimant's Psychologist's testimony was equivocal and could not support an award of benefits, even if credited, because he could not specifically relate Claimant's symptoms and disability to the alleged concussion or post-concussion syndrome, rather than her migraine headaches because he did not believe it was "critical that we understand that." (Employer's Br. at 22 (quoting R.R. at 69a-70a).) Employer argues the WCJ gave multiple reasons for rejecting Claimant's Psychologist's testimony and accepting Employer's Neurologist's testimony, each supported by the record, and that this determination should not be second guessed by the Court on appeal. Claimant's challenge to Employer's Neurologist's definition of "concussion," Employer asserts, is without merit because it is apparent from reading the transcript as a whole that the definition given by its expert was clear and concise and not conflicting. As for Claimant's contention that Employer's Neurologist's testimony supports the grant of the Claim Petition for a head contusion, Employer maintains that his testimony was first, that

12

no injury had occurred and second, **if** any injury had occurred, it was a only a mild scalp or head contusion from which she had fully recovered.

After setting forth the relevant standards for reviewing claim petition proceedings and a substantial evidence challenge, we will address these arguments in turn.

### B. Discussion

In a claim petition proceeding, the claimant bears the burden of establishing all of the elements necessary to support an award of workers' compensation benefits, including the existence of an injury and disability, and a causal relationship between the injury and the work incident. *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Thomas)*, 725 A.2d 873, 876 (Pa. Cmwlth. 1999). Disability is the loss of earnings or earning power that is caused by the work-related injury. *School Dist. of Phila. v. Workers' Comp. Appeal Bd. (Lanier)*, 727 A.2d 1171, 1172 (Pa. Cmwlth. 1999). Where the causal relationship between the work incident and the injury is not obvious, unequivocal medical evidence is necessary to establish that relationship. *Roundtree v. Workers' Comp. Appeal Bd. (City of Philadelphia)*, 116 A.3d 140, 145 (Pa. Cmwlth. 2015). When unequivocal medical evidence is necessary, "the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in [the witness's] professional opinion the result in question did come from the assigned cause." *Berks Cty. Intermediate Unit v. Workmen's Comp. Appeal Bd. (Rucker)*, 631 A.2d 801, 804 (Pa. Cmwlth. 1993). Medical evidence that is less than positive or is based on possibilities is equivocal and is not legally competent evidence that establishes the necessary causal relationship. *Potere v. Workers' Comp. Appeal Bd. (Kemcorp)*, 21 A.3d 684, 690

13

(Pa. Cmwlth. 2011). "Whether an expert's opinion is competent is a question of law subject to plenary review." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

In reviewing a substantial evidence[6] challenge, we "consider the evidence as a whole, view the evidence in the light most favorable to the party who prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in" that party's favor. *Frog, Switch & Mfg. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (quotation omitted). Where both parties present evidence, it does not matter if there is evidence that supports a contrary finding; the only question is whether there is evidence that supports the findings that were made. *McCabe v. Workers' Comp. Appeal Bd. (Dep't of Revenue)*, 806 A.2d 512, 515 (Pa. Cmwlth. 2002). "The WCJ is the ultimate fact finder and has complete authority for making all credibility" and evidentiary weight determinations. *Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.)*, 812 A.2d 750, 755 (Pa. Cmwlth. 2002). It is well-settled that a "WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted." *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prod., Inc.)*, 721 A.2d 1152, 1156 (Pa. Cmwlth. 1998). Where the WCJ is required to assess the credibility of deposition testimony, the WCJ must articulate objective bases for crediting one witness's deposition testimony over another witness's deposition testimony. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1053-54 (Pa. 2003). In the rare instances where we review a credibility determination, "[w]e must view the reasoning as a whole and overturn the credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension

_____

[6] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kriebel*, 29 A.3d at 769.

14

of material facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

Here, in order to prevail on her Claim Petition, Claimant had to present evidence that established she sustained a work-related injury that resulted in a disability or loss of earnings. Claimant's evidence sought to establish a very specific injury, that she sustained a concussion and/or post-concussion syndrome as a result of her striking her head on November 2, 2017, while at work. Although the WCJ credited Claimant's testimony regarding how she struck her head and her treatment that immediately followed that incident, the WCJ did not credit either her testimony or that of Claimant's Psychologist regarding her having a disabling, work-related concussion and/or post-concussion syndrome. The WCJ gave multiple objective reasons for those credibility determinations, as well as for why he credited Employer's Neurologist's testimony, (*see* FOF ¶ 5), only one of which Claimant challenges in this appeal – that Employer's Neurologist gave "a very specific definition of concussion, which was absent from the testimony of [Claimant's Psychologist]," (*id.* ¶ 5c). Claimant contends that Employer's Neurologist's testimony should not have been credited because the definitions he gave were conflicting and, therefore, do not constitute substantial evidence that supports the WCJ's credibility determination.

Notwithstanding that the WCJ gave no fewer than three other reasons for crediting Employer's Neurologist's testimony and no fewer than four other reasons for rejecting Claimant's Psychologist's testimony, which are independently supported by the record, we consider Claimant's contention that the alleged conflicting definitions of "concussion" proffered by Employer's Neurologist

15

rendered the WCJ's credibility determination not supported by substantial evidence.

The following exchange occurred on cross-examination:

Q. [Employer's Neurologist], what are concussion symptoms?

A. Well, concussion symptoms are transient loss or alteration of consciousness following a closed [head] injury, it lasts about twenty minutes. In truth, that's a concussion. The symptoms that linger on for a period of time, we call those post[-]concussive symptoms.

Q. Okay. So, **a concussion is** being unconscious for twenty minutes?

A. No, its **loss or a lapse of awareness, a loss of consciousness, or just being confused, disoriented, having some lapse or impact on awareness following a closed head injury**.

Q. And **what's your definition of a closed head injury**?

A. **Has to be a blow to the brain or skull that causes a disturbance of brain function without any clear signs of structural damage**.

Q. What are post[-]concussive symptoms?

A. Well, they tend to be very subjective. They typically are most intense following a - - they are most intense following a concussion based, and they often times are subjective, in nature. But they are, consistent with headaches at times, blurring of vision, difficulty with concentration, short-term memory. Sometimes blurring of vision, gait and balance issues can occur. But they typically are most intense in the period almost immediately following the actual event, itself. And over time, they will resolve.

. . . .

Q. Did you review the WorkNet notes?

A. I saw WorkNet notes.

Q. **Did you see in those WorkNet notes, that on three different occasions that [Claimant] was diagnosed with a closed head injury**, following the November 2nd, 2017 work event?

16

A. **That's very nonspecific. Anytime you get hit in the head, we call it a closed head injury, it doesn't necessary mean it's a concussion. It's a very general nonspecific term. All it implies is something happened, you got hit in the head.**

Q. Well, **I thought you said earlier on, that a closed head injury was defined as having a trauma to the skull or to the brain**?

A. No, **that's concussion**. I didn't say closed head injury. Closed head injury, you can bump your head on an overhanging shelf, it doesn't mean you're going to get a concussion. It means you could get a bruise, and it can be a head contusion, facial contusion. But it doesn't mean it's a concussion.

(R.R. at 152a-53a, 156a-57a (emphasis added).) Employer's Neurologist then went on to opine that, based on his examination of Claimant, a review of Claimant's medical records, the insignificant nature of the event, and the lack of evidence of a concussion or post-concussion syndrome, Claimant did not suffer from these alleged injuries. (*Id.* at 160a-62a.)

Reviewing Employer's Neurologist's testimony as a whole and in the light most favorable to Employer as the party that prevailed before the WCJ, we conclude that a reasonable mind would accept Employer's Neurologist's expert testimony as adequate to support the finding that he provided a specific definition of the term concussion where Claimant's Psychologist did not. Thus, such testimony constitutes substantial evidence to support the WCJ's finding. *Kriebel*, 29 A.3d at 769. Reading that testimony as a whole, we disagree with Claimant that it is conflicting or is otherwise legally incompetent. *See Casne*, 962 A.2d at 16 ("A medical expert's opinion is not rendered incompetent unless it is solely based on inaccurate or false information."). From Employer's Neurologist's testimony as a whole, we discern that a closed head injury is a more generic term to describe a blow to the head and

17

is different from a concussion, which occurs following a closed head injury but also involves, among other symptoms, a loss of consciousness or lapse of awareness, confusion, or disorientation. To the extent there may have been some confusion regarding what a closed head injury was, Employer's Neurologist sufficiently clarified his explanations. Having concluded the WCJ's explanation for his credibility determination in this regard is supported by substantial evidence, Claimant's challenge to the rejection of her expert's testimony and the WCJ's conclusion that she did not establish that she sustained a work-related concussion/post-concussion syndrome fails.

As to the second issue, whether there is substantial evidence in the record to support the grant of the Claim Petition for a head contusion, an examination of the record reveals that this claim also fails. A review of Claimant's evidence reveals that, even if credited, it would not establish the existence of a contusion. Claimant did not indicate that she suffered a contusion on November 2, 2017, as this was not one of the symptoms she alleged to have had following the incident. (*See* R.R. at 32a.) Claimant's Psychologist did not testify as to any such injury and acknowledged that he did not see a bruise on Claimant's head when he first examined her about a month after the work incident. (*Id.* at 71a.) And, while Employer's Neurologist did refer to a head contusion, he did so as only a **possible** injury from the November 2, 2017 incident. He did not state that, in his professional opinion, Claimant sustained a contusion as a result of the November 2, 2017 work incident or that any such injury would have resulted in a loss of earnings. Rather, Employer's Neurologist explained that "**if she had had any injury**, it would have been most consistent with a mild scalp or head contusion. A very minimal injury," from which she was fully recovered with "no residuals." (*Id.* at 149a (emphasis

18

added).) He further testified that "**[t]o the extent** [she had an injury], the injury was quite minimal, **at most** she would have had a head contusion." (*Id.* at 156a (emphasis added).) In fact, per Employer's Neurologist's review of the WorkNet records, Claimant's "physical examination was entirely normal. There was -- she said there was abrasions of the scalp, but there was nothing that one could see." (*Id.* at 166a.) Thus, Employer's Neurologist's testimony, based only on possibilities, would not be unequivocal evidence that would support a finding. Moreover, even if there was evidence that she sustained a head or scalp contusion or that an NTCP accepting that injury existed, Claimant presented no evidence that she was disabled **by that injury** or that her medical treatment was for **that injury**. All of Claimant's assertions of disability and medical treatment were related to the symptoms she claimed were due to a concussion or post-concussion syndrome she allegedly suffered on November 2, 2017. Under these circumstances, we cannot say the Board erred in upholding the denial of the Claim Petition in its entirety.

## III. Conclusion

For the foregoing reasons, there was no error in the Board upholding the WCJ's determination that Claimant did not meet her burden of proof on the Claim Petition. Accordingly, we affirm.

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kimberly Canfield,            :
           Petitioner       :
           :
       v.           :    No. 664 C.D. 2019
           :
Workers' Compensation Appeal    :
Board (Western Power Sports, Inc.),   :
           Respondent    :

# O R D E R

NOW, January 13, 2020, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

 

_____
**RENÉE COHN JUBELIRER,** Judge