IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| John Michali, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1142 C.D. 2020 |
| | : | Submitted: March 12, 2021 |
| Carrara Steel, Inc. (Workers' | : | |
| Compensation Appeal Board), | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                    FILED:  August 13, 2021


John Michali (Claimant) petitions this Court for review of the October 27, 2020 Order (Order) of the Workers' Compensation Appeal Board (Board) affirming the October 17, 2019 Decision and Order of the workers' compensation judge (WCJ) that denied Claimant's Petition to Reinstate Compensation Benefits (Reinstatement Petition), Petition for Penalties (Penalty Petition), and Claim Petition for Workers' Compensation Benefits (Claim Petition) filed against Carrara Steel, Inc. (Employer).

## I.     Background and Procedural History

On January 24, 2003, Employer issued a Notice of Temporary Compensation Payable (NTCP) for a September 3, 2002 injury described as a low

back and left leg sprain. WCJ's Dec. and Order, 10/17/19, Finding of Fact (F.F.) No. 3. On May 8, 2003, an amended NTCP and a Supplemental Agreement were issued suspending Claimant's wage loss benefits, as of April 14, 2003, when Claimant returned to work without any further loss of earnings.

On February 2, 2018, Claimant filed the Reinstatement Petition and a Penalty Petition alleging that he was on light-duty restrictions when he retired and that he began receiving Social Security Disability Insurance (SSDI). In addition, he alleged that Employer refused to pay his unpaid medical bills and prescriptions. He sought penalties and attorney's fees. F.F. No. 1.

On April 4, 2018, Claimant filed the Claim Petition alleging that he sustained an aggravation of his preexisting September 3, 2002 low back injury. Claimant alleged that this aggravation occurred on March 22, 2016, and he described the injury as "L3-L4 diffuse disc bulge laterally on the left side causing significant narrowing of the left neural foramen, and narrowing of right neural foramen; [and] L5-S1 diffuse and bioforaminal disc bulge and change of facet hypertrophy causing narrowing of both neural foramina," resulting from "[r]epetitive use of [his] back over the course of years." Claim Petition at 2; Agency Record, Item No. 2.

The petitions were assigned to the WCJ, who held multiple hearings and accepted documentary evidence prior to issuing her October 17, 2019 Decision and Order, which included findings of fact and conclusions of law.

## II.    The WCJ's Decision and Order

At the March 13, 2018 hearing in this matter, Claimant testified that he hurt his left low back, buttocks, and left leg when he stepped over a steel beam on September 3, 2002. F.F No. 4. He returned to work with restrictions in 2003 and continued treating with Jithendra Rai, M.D., from whom he received injections,

2

ablations, and medication. *Id.* He testified that, in March 2016, his back got worse and his supervisor took him to the emergency room. *Id.* He followed-up with Dr. Rai, who took him off work. *Id.* Claimant testified that when he subsequently took the off-work slip from Dr. Rai to Employer, he was told to collect unemployment benefits, even though he responded that he should be receiving workers' compensation benefits. *Id.* Claimant further testified that he contacted Employer's workers' compensation carrier to have his benefits reinstated and was informed that disability benefits would not be reinstated but that his medical benefits remained open. *Id.*

In addition, Claimant testified that he applied for unemployment compensation benefits and SSDI and that he received physical therapy, for which Employer's workers' compensation insurance carrier initially paid but then later denied. *Id.* He testified that he was told to turn in his receipts and that he would be reimbursed, but he never received reimbursement. *Id.* On cross-examination, Claimant testified that he did not file for retirement and did not receive a pension but that he collected money from a savings account, from which he received two disbursements since the date he last worked. *Id.*

At a hearing on May 1, 2018, Claimant further testified that since returning to work in 2003, he never performed modified duty. F.F. No. 6. When he brought his off-work slip to Employer in May 2016, he was assigned painting duties that he performed for a few days, but which hurt his back. *Id.* He testified that, in addition to standing and painting, the ladder he was using irritated his condition, and that the duties were beyond his work restrictions, limiting his lifting to no more than 20 pounds. *Id.*

3

Claimant testified for a third time at a hearing on September 19, 2018. At that hearing, he stated he was at home in April 2016, when he bent over to retrieve his sneakers, and experienced back pain.  F.F. No. 8.  He then went to work, where he stayed for 20 minutes before leaving for the emergency room.  *Id*.  He testified that he asked Dr. Rai to release him to work, but when he was released to work, he was assigned the aforementioned painting duties, which he performed for two days. *Id*.  He complained to Terry Carrara, one of the owners of Employer, but was informed that no other light-duty work was available, so he left.  *Id*.  Claimant testified that he was familiar with Employer's light-duty program but that he did not feel he could perform light-duty work because of the condition of his back and because he felt he would be "belittled" by Employer to do more.  *Id*.; Reproduced Record (R.R.) at 170.[1]

Claimant testified for a fourth time at a hearing held on March 13, 2019. He explained that he attended an Independent Medical Examination (IME) with John Bookwalter, M.D., but that the doctor just "poked his legs and looked at his scar," and merely asked him for a "Reader's Digest" description of his work injury and would not allow him to fully relate his history with regard to the work injury.  F.F. No. 10.

Claimant presented the deposition testimony of Dr. Rai, a pain management physician, which was taken on November 28, 2018.  F.F. No. 11.  Dr. Rai testified that he began treating Claimant in 2003, following the work injury to

---

[1] In the reproduced record, Claimant did not follow his numbering with a small "a" as required by Pennsylvania Rule of Appellate Procedure Rule 2173.  PA. R.A.P. 2173 (providing "the pages of ... the reproduced record and any supplemental reproduced record shall be numbered separately in Arabic figures.... thus 1, 2, 3, *etc.*, followed in the reproduced record by a small a, thus la, 2a, 3a, *etc.*, and followed in any supplemental reproduced record by a small b, thus 1b, 2b, 3b...").

Claimant's low back and an L5-S1 discectomy. *Id.* He testified that, at that time, MRIs revealed Claimant had degenerative disc disease at L2-L3 and L5-S1, in addition to arthritis in his lower lumbar spine, in the nature of facet arthropathy and a small left disc protrusion at L3-L4, and neuroforaminal narrowing and a small mid-line disc protrusion at L3-4. *Id.* Dr. Rai released Claimant to work in 2003 and agreed that Claimant's restrictions did not change between 2003 and 2016. *Id.* Dr. Rai testified that Claimant's degenerative process progressed between 2003 and 2016, and noted that Claimant had other health conditions, including an aortic valve replacement, and that he had undergone a double bypass surgery and was on Coumadin. *Id.* Dr. Rai testified that he did not think Claimant was capable of performing any meaningful work because of his severe degenerative disc disease and opined that Claimant suffers from chronic pain syndrome, which he believed to be related to Claimant's work. *Id.* He acknowledged taking Claimant completely off work in June 2018, but that Claimant was not capable of working as early as June 2016. *Id.* However, he also acknowledged that he released Claimant to return to work in May 2016 and did not issue another off-work slip until June 2018. *Id.* He testified that the deterioration of Claimant's spine is related to his work activities. *Id.* Dr. Rai acknowledged that Claimant had other health conditions, including cancer of the larynx and lung problems that required removal of part of his lung. *Id.* On cross-examination, Dr. Rai could not explain why, in March 2018, his records noted that Claimant was retired, when previous records indicated Claimant was employed. *Id.*

At a May 1, 2018 hearing, Employer presented the testimony of Patrick Carrara, one of Employer's owners and the individual who handles workers' compensation matters. He testified that Claimant returned to work as a shop foreman

5

in 2003, and did not miss much work between then and the date he last worked in 2016. F.F. No. 5. He acknowledged that Claimant had some non-work-related health issues during that 13-year period. He further testified that the March 22, 2016 doctor's note that Claimant provided did not mention anything about the off-work recommendation being related to Claimant's work injury. *Id.* He added that, after Claimant's brief return to work in June 2016, Claimant submitted a request for his pension money. *Id.* Mr. Carrara also testified that light-duty work remains available but that it was his understanding Claimant had retired. *Id.* On cross-examination, Mr. Carrara testified that Claimant never returned to his date-of-injury job, after his return to work in 2003, and that he always had been working modified duty. *Id.* When he testified again at the hearing held on September 19, 2018, Mr. Carrara stated that he agreed Employer's pension plan does not state that an employee is required to retire to receive the pension. F.F. No. 7. However, he added that Claimant stopped working in June 2016, and took his pension as of January 2017. *Id.*

Employer also presented the testimony of Terry Carrara at the September 19, 2018 hearing. He testified that while he assigned painting duties to Claimant, he never thought Claimant would climb a ladder because the building is small and only one-story high, and he did not think Claimant would work beyond his restrictions. F.F. No. 9. He denies that he would have told Claimant there was no other light-duty work available because Employer maintains a light-duty program. *Id.*

Employer presented the May 1, 2019 deposition testimony of John Bookwalter III, M.D., a board-certified neurosurgeon. Dr. Bookwalter examined Claimant on February 27, 2019. F.F. No. 12. He testified that he did not believe

6

Claimant's 2016 disability was related to his 2002 work injury. *Id.* Dr. Bookwalter testified that he believed Claimant's condition was due to his degenerative process and not specific to the 2002 work injury. *Id.* The doctor also testified that Claimant's degenerative condition at other levels of his back, outside the surgical level of L5-S1, are not related to his work injury but are part of an age-related degenerative process. *Id.* The WCJ found "[o]n cross-examination, Dr. Bookwalter testified that he was not aware that Dr. Rai had opined that retrolisthesis at L2-L3 through L5-S1 were related to [] Claimant's work duties and noted that retrolisthesis is a finding that the vertebral body is sitting slightly backwards, which is consistent with degenerative disc disease, it is not caused by an event or a trauma, it is just part of the degenerative process." *Id.* In addition, Dr. Bookwalter opined that Claimant can continue to perform light-duty work but that his other non-work-related health issues might affect his ability to work. *Id.*

The WCJ stated that Claimant presented various prescription receipts but that some were "generic ledger type receipts, with no indication who issued the receipts or for what service the receipts were generated." F.F. No. 13. The WCJ noted that Employer presented a copy of a February 18, 2016 letter from a certified public accountant to Claimant regarding the "Amthor/Carrara Steel Pension Plan." F.F. No. 14. In addition, Employer presented a January 19, 2017 Amthor Steel Pension Plan Application for benefits, signed by Claimant and requesting the balance of the Pension Plan to be disbursed on an annual basis at $5,000 per year. *Id.* The WCJ added that Employer presented a June 28, 2018 job offer letter to Claimant, in which work was made available, starting July 9, 2018, based on the May 2016 work release from Dr. Rai. F.F. No. 15.

Based on the evidence of record, the WCJ determined Claimant was not entitled to reinstatement of his workers' compensation benefits because his loss of earnings was associated with his retirement from Employer. F.F. No. 18.b. In addition, the WCJ found that light-duty work was available to Claimant. Thus, his loss of earnings was not due to being taken off work because of his work injury; it was due to his retirement from Employer. F.F. No. 18.d. The WCJ found Dr. Bookwalter more credible than Dr. Rai, noting that while Dr. Rai felt that retrolisthesis, which did not exist at the time of Claimant's 2002 work injury, was related to Claimant's work duties, Dr. Rai's opinion was conclusory. F.F. No. 18.e. To further support her credibility determinations, the WCJ noted that up to April 2016, when Dr. Rai saw Claimant due to back pain that occurred while bending to reach for a pair of sneakers at his home, Claimant had been working modified duty and had been doing so since 2003. *Id.* "Although Dr. Rai opined that the disability in 2016[,] was directly related to the work injury, this [WCJ] does not find that opinion credible." *Id.* Accordingly, the WCJ found Dr. Bookwalter's view that Claimant's onset of back pain was directly related to reaching for sneakers at his home in 2016 to be more credible than the opinion expressed by Dr. Rai. *Id.*

Further, the WCJ could not determine what Claimant's prescription receipts were for, finding that "a proper review cannot be made." F.F. No. 18.g. Thus, the WCJ concluded that Claimant did not establish his prescription receipts were causally related to the work injury.

The WCJ further concluded that Claimant did not meet his burden of proof on the Reinstatement Petition because he did not establish his disability, as of March 22, 2016, was related to the September 2002 work injury. The WCJ also determined that "Claimant has not established that he suffered a new injury on March

8

22, 2016 related to 'repetitive use of low back over the course of years.'" Conclusion of Law No. 6. Accordingly, the WCJ denied all three of Claimant's Petitions, and Claimant appealed to the Board.[2]

### III. The Board's Opinion and Order

In an Opinion and Order dated October 27, 2020, the Board affirmed the WCJ. Although the Board acknowledged that the WCJ did not make a specific credibility determination in regard to Claimant's testimony, the Board determined the WCJ found that (1) Claimant pled, in his Reinstatement Petition, that he had retired, (2) Claimant was working modified duty in March 2016 and understood that Employer maintained a light-duty program that was available to him, and (3) Claimant applied for pension benefits in January 2017, but Claimant's treating physician did not provide him with an off-work note until June 2018 - after Claimant had left work, took his pension, and applied for SSDI. Bd. Op. at 8. Citing *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 2 A.3d 548 (Pa. 2010), the Board stated that "Claimant had the burden of proving that his loss of earnings in 2016 was a continuation of the disability which arose from his 2002 work injury." Bd. Op. at 8. The Board continued:

> Although the WCJ did not explicitly so state, the WCJ did not find Claimant's testimony credible. Therefore, the burden did not shift to [Employer]. Notwithstanding, the WCJ concluded, under the totality of the circumstances, that Claimant voluntarily withdrew from the workforce. Because the WCJ found that at the time Claimant stopped working, he was not unable to engage in substantial employment due to his work-related injury, his subsequent application for and receipt of SSDI did not prove that he was forced out of the entire labor market.

---

[2] In his appeal to the Board, Claimant did not contest the WCJ's Decision and Order relative to his Penalty Petition. Thus, we do not address it any further herein.

9

Bd. Op. at 9.

The Board further determined that the WCJ had issued a reasoned decision as required by the Workers' Compensation Act (Act).[3] The Board stated:

> Claimant argues that Dr. Bookwalter never gave an opinion as to whether Claimant's work duties aggravated his pre[]existing injury, but only opined that the March 2016 event was too remote in time from the 2002 injury to be related; therefore, Dr. Rai's opinion is unrebutted. We discern no merit in this distinction.
>
> The WCJ found that Claimant had pre[]existing degenerative disc disease at several levels at the time of the 2002 injury. She accepted Dr. Bookwalter's opinion attributing Claimant's symptoms in 2016[,] to the natural progression of degenerative disc disease and not to his work injury. The requirement for a reasoned decision does not radically depart from the traditional deference given to a WCJ's credibility determinations. *Casne*.[4] We determine no error.

Bd. Op. at 13.

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

[4] *Casne v. Workers' Comp. Appeal Bd. (State Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008):

> Credibility determinations are more than a series of individual findings. Rather, they represent the evaluation of a total package of testimony in the context of the record as a whole, and reflect subtle nuances of reasoning that may not be fully articulated, nor even fully appreciated, by the fact-finder. Accordingly, we believe that, even where a WCJ has based a credibility determination on a cold record, substantial deference is due. We must view the reasoning as a whole and overturn the credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational.

The Board affirmed the Decision and Order of the WCJ, and Claimant filed a Petition for Review with this Court.[5]

## IV. Arguments

### A. Claimant's Arguments

Claimant argues that there is no evidence of record to support the WCJ's determination that he had retired from his employment with Employer. In part, Claimant asserts that Employer "agreed to pay him unemployment benefits, and [that he] received those benefits," noting "[u]nemployment benefits are not payable to one who is retired." Claimant's Br. at 8. Claimant argues that, at the first hearing in this matter, he amended the statement in his Reinstatement Petition that he had voluntarily retired and that the WCJ completely disregarded same. Claimant's Br. at 10. Claimant further argues that, even if the Reinstatement Petition did, in fact, contain an admission that he had retired, the Petition is not part of the evidentiary record, as it was never offered as an exhibit. *Id.* Claimant contends that there was no evidence that he made a contemporaneous application for his pension upon the termination of his employment with Employer, and he asserts that the acceptance of a pension is a rebuttable presumption of retirement. Claimant's Br. at 12.

Claimant notes that his treating physician, Dr. Rai, testified that, from June 2016 through the present, Claimant is, and has been, totally disabled from any

---

[5] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830 (Pa. 2013). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Phila. v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

11

work and that this opinion is supported by the fact that Claimant was awarded SSDI benefits and that the only conditions for which he received same were his 2002 work-related injuries, *i.e.,* his low back and left leg.  Claimant's Br. at 13.

Further, Claimant argues that the WCJ failed to issue a reasoned decision as required by the Act.  Claimant contends that the WCJ "gave no articulable reason for rejecting Dr. Rai's opinion relating to the aggravation of [] Claimant's low-back condition as a result of his work duties."  Claimant's Br. at 22.  Claimant maintains:

> The unrebutted medical evidence produced by [] Claimant clearly and convincingly proved that Claimant suffered new injuries as a result of his work duties up and through March 22, 2016.  Dr. Rai's testimony, which was stated to a reasonable degree of medical certainty, was that Claimant's work duties, each and every day, contributed to the progression of his degenerative disc disease, and the retrolisthesis at L2-[L]3 and at L5-S1, which was not present in 2003.  He also testified to a reasonable degree of medical certainty that Claimant suffered from failed back syndrome, which was not present in 2003, and that the failed back syndrome was directly related to [C]laimant's job duties.  This opinion is substantiated by Claimant being award [sic] [SSDI] benefits, effective March 22, 2016, solely based on the accepted work injury.
>
> Dr. Bookwalter's testimony only addressed the issue of causation as it related to Claimant putting on his shoes in 2016 and the accepted work injury of 2002.  His testimony was the event of 2016 that caused Claimant's back injury was to [sic] remote from 2002 to correlate the two.  Nowhere in his deposition was he asked any questions about the new injuries[,] and nowhere did he opine that [C]laimant did not suffer new injuries to his back.  Thus, the only medical evidence of record is Dr. Rai's opinions.

Claimant's Br. at 23.

## B. Employer's Arguments

Employer argues that collateral estoppel bars this Court's review of the "retirement issue." Employer's Br. at 17. Employer states that the WCJ denied Claimant's Reinstatement Petition and Claim Petition "in reliance upon the finding that Claimant had retired." *Id.* Employer notes that Claimant specifically chose to appeal the Board's determination relative to his Claim Petition and that, in his docketing statement filed with this Court, Claimant confirmed that he was *not* appealing the denial of his Reinstatement Petition. Employer's Br. at 5. Accordingly, Employer asserts that the WCJ's finding that Claimant retired from the workforce is final, and, thus, "[c]ollateral estoppel precludes Claimant's attempt to relitigate the issue again in his appeal of the denial of his [C]laim [P]etition." Employer's Br. at 17. In the alternative, Employer argues that this Court should affirm the Board, which affirmed the WCJ, as to Claimant's retirement from Employer because said determination was based on substantial evidence. Employer's Br. at 19.

Employer states "[i]f a claimant voluntarily leaves the labor market, he is not entitled to workers' compensation benefits. A finding of retirement 'must be considered in the context of the totality of the circumstance[s].'" Employer's Br. at 19 (quoting *City of Pittsburgh v. Workers' Comp. Appeal Bd. (Robinson)*, 67 A.3d 1194, 1209 (Pa. 2013)). Employer notes that "[t]he WCJ may rely upon 'the claimant's own statements relating to voluntary withdrawal from the workforce' and upon evidence relating to [c]laimant's failure to seek employment." Employer's Br. at 19 (quoting *Robinson* 67 A.3d at 1210). Employer argues that, while it is true that Claimant's counsel told the WCJ that Claimant's Reinstatement Petition contained a mistake, in that he had not voluntarily retired from Employer, Claimant did not file

an amendment to the Petition, the WCJ did not address his oral request to amend the Petition, and "[t]he WCJ was free to reject this explanation." Employer's Br. at 20.

Employer further argues that Dr. Rai confirmed he released Claimant to light-duty work on May 24, 2016, and that when Claimant walked off the job in June 2016, Dr. Rai had not issued him a new off-work slip. Employer's Br. at 21. Employer maintains that the WCJ was free to accept or reject Claimant's contention that he was not able to perform light-duty work, and Employer's medical expert, Dr. Bookwalter, confirmed Claimant's work injury did not prevent him from performing light-duty work. Thus, "there is competent evidence of record to support a finding that Claimant had declined work within his doctor's light-duty restrictions and chose, instead, to retire from the workforce." Employer's Br. at 22.

Employer disputes Claimant's contention that his receipt of unemployment compensation benefits proves he did not retire, adding there is no evidence of record to demonstrate whether Claimant's retirement was disclosed when he sought and/or received unemployment compensation benefits. Further, Employer notes that Claimant asserts he was completely disabled from work, but such a disability would have disqualified him from unemployment compensation because he would have had to have been able and available to work. Employer's Br. at 26.

In addition, Employer argues that the WCJ issued a reasoned decision, stating:

> Dr. Rai's opinion was, in fact, disputed, as Dr. Bookwalter rejected the theory that Claimant's disc disease was aggravated by daily work activities and that it eventually caused the March 22, 2016 incident. Dr. Bookwalter testified that the progressive worsening of the pre[]existing degenerative changes were not work[]related.

14

Dr. Bookwalter was asked whether the progression and worsening of the degenerative changes were related to Claimant's work activities. The doctor responded with an unequivocal "No."

He explained that the progression of these degenerative changes [was] "part and parcel of age-related degenerative change."

Employer's Br. at 28-29.

Employer maintains that "Dr. Bookwalter [] confirmed that the March 2016 onset was not related to the 2002 work injury," and "[t]he WCJ recited and reviewed in detail the relevant medical evidence presented by both doctors and she explained why she accepted Dr. Bookwalter's opinion and rejected Dr. Rai's opinion. She noted that 'Dr. Rai's opinion was conclusory, [and] he provided no basis or rationale for the diagnosis.'" Employer's Br. at 30 (citing F.F. No. 18.e., Bd. Op. at 12-13).

### V. Discussion

At the outset, we note that in his Docketing Statement with this Court, Claimant stated:

Claimant filed a Reinstatement Petition and a Claim petition. Both were denied by the WCJ and the [Board]. *Claimant is not appealing the denial of the Reinstatement Petition.* Claimant's doctor and [] [E]mployer's doctor both testified regarding the Reinstatement Petition[,] and the WCJ found the employer's doctor to be more credible.

Docketing Statement, 1/4/21, at 3 (emphasis added). In his brief to this Court, Claimant further confirmed that he was not seeking review of the denial of his Reinstatement Petition, stating in regard to Employer's medical expert, "[h]e only offered an opinion on the Reinstatement Petition, which is not on appeal here."

15

Claimant's Br. at 8. As Claimant chose not to seek review of the Board's Order relative to his Reinstatement Petition, we have no need to address it further. Thus, we turn our attention to Claimant's appeal of the Board's Order affirming the WCJ's denial of his Claim Petition.

"[T]he burden of proof in a claim petition rests on the claimant to demonstrate not only that he has sustained a compensable injury but also that the injury continues to cause disability throughout the pendency of the claim petition." *Innovative Spaces v. Workmen's Comp. Appeal Bd. (DeAngelis)*, 646 A.2d 51, 54 (Pa. Cmwlth. 1994).

Claimant, here, argues that Employer's medical expert, Dr. Bookwalter, only addressed causation as it related to Claimant's incident involving tying his sneakers in 2016 and how that was too remote from the 2002 work injury for one to relate to the other. Claimant asserts that Dr. Bookwalter was not asked any questions about a new injury(ies) and that he did not opine as to whether Claimant suffered new injuries to his back. Thus, the only medical evidence of record in this regard was from Dr. Rai. We disagree.

As the Board noted in its Opinion: "[The WCJ] accepted Dr. Bookwalter's opinion attributing Claimant's symptoms in 2016 to the natural progression of degenerative disc disease and not to his work injury." Bd. Op. at 13. In addition, Dr. Bookwalter was consistent that any issues Claimant is currently experiencing are due to age-related degeneration, not his work injury in 2002, or any more recent work-related cause. Dr. Bookwalter testified that Claimant's condition was stable until March 2016, "when he bent forward to tie his shoes and experienced the onset of increased back symptoms." R.R. at 225. Claimant points out that Dr. Rai testified that Claimant's work duties contributed, on a daily basis, to the

16

progression of his degenerative disc disease, and to retrolisthesis at L2-L3 and at L5-S1, which was not present in 2003. However, Dr. Bookwalter testified that imaging reports indicated Claimant had degenerative changes at both L2-L3 and L5-S1 and that there was no indication degenerative changes found throughout Claimant's spine are work-related. In fact, Dr. Bookwalter specifically testified that "[t]his would be part and parcel of age-related degenerative change." *Id.*

In a workers' compensation case, the WCJ is the sole arbiter of fact. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434 (Pa. 1992). The findings of the WCJ can only be disturbed if there is no competent evidence to support the findings. *Universal Cyclops Steel Corp. v. Workmen's Comp. Appeal Bd. (Krawczynski)*, 305 A.2d 757 (Pa. Cmwlth. 1973). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses. *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703 (Pa. Cmwlth. 1995). Determinations of credibility and the weight to be afforded evidence are the prerogative of the WCJ, not the Board. *Vols v. Workmen's Comp. Appeal Bd. (Alperin, Inc.)*, 637 A.2d 711 (Pa. Cmwlth. 1994). "A decision is 'reasoned' for purposes of [the Act] if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003).

In the instant matter, the WCJ, *i.e.*, the sole arbiter of fact, weighed Dr. Bookwalter's testimony against that of Dr. Rai and determined Dr. Bookwalter's testimony to be more credible, explaining his reasons therefore in sufficient terms

for this Court to provide adequate review. Thus, we conclude the Board did not err in affirming the WCJ's determination in this regard.

We next consider Claimant's contention that he did not retire from Employer. In evaluating whether Claimant had voluntarily removed himself from the labor market, the WCJ considered Claimant's actions along with his initial contention in his Reinstatement Petition that he had retired. Even though Claimant's counsel later attempted to recant that position, the WCJ was not required to accept the new explanation as the truth. While Claimant suggests that his award of SSDI is evidence that he did not retire, it is not that simple. As Employer asserts, there was no evidence presented of the basis for the Social Security Administration's decision to award benefits to Claimant. Further, the WCJ, in weighing the evidence in its totality, was reasonably able to conclude, on balance, that, in fact, Claimant had retired. Again, we will not second guess the WCJ's determination in this regard, especially where the WCJ was able to assess Claimant's credibility through live testimony. As the Board noted, "[a]lthough the WCJ did not explicitly so state, the WCJ did not find Claimant's testimony credible. Therefore, the burden did not shift to [Employer]." Bd. Op. at 9. Notwithstanding the absence of an explicit credibility determination, the WCJ reasonably concluded, based on the totality of the circumstances, that Claimant voluntarily withdrew from the workforce and at the time he stopped working, Claimant was not unable to engage in employment due to his work injury. We agree with the Board that "[Claimant's] subsequent application for and receipt of SSDI did not prove that he was forced out of the entire labor market." Bd. Op. at 9. Further, Claimant's receipt of unemployment compensation benefits is no more helpful to Claimant's position, when, as Employer raises, the receipt of unemployment benefits might be interpreted to suggest that Claimant was

18

able to work. Accordingly, we see no basis upon which we would disturb the Board's Order affirming the WCJ.[6]

## VI.     Conclusion

For the foregoing reasons, we affirm the October 27, 2020 Order of the Board affirming the WCJ's October 17, 2019 Decision and Order.

_____
J. ANDREW CROMPTON, Judge

---

[6] We reject Employer's contention that Claimant's appeal of the retirement issue is precluded by collateral estoppel. The question of whether Claimant had retired from Employer was as relevant to the Claim Petition as it was to the Reinstatement Petition. We do not believe Claimant abandoned the retirement issue when he decided to contest the Board's opinion in regard to the Claim Petition but not in regard to the Reinstatement Petition, especially since Claimant made clear that the decision was based on grounds other than the WCJ's and the Board's determination regarding his retirement status.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Michali,                               :
                           Petitioner       :
                                            :
            v.                              :     No. 1142 C.D. 2020
                                            :
Carrara Steel, Inc. (Workers'               :
Compensation Appeal Board),                 :
                           Respondent       :


# **O R D E R**


AND NOW, this 13th day of August 2021, the October 27, 2020 Order
of the Workers' Compensation Appeal Board is **AFFIRMED**.


                              _____
                              J. ANDREW CROMPTON, Judge