# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Eric P. Manson, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 604 C.D. 2020 |
| | : | Submitted: November 5, 2021 |
| Konica Minolta Business | : | |
| Solutions U.S.A., Inc. | : | |
| (Workers' Compensation Appeal Board), | : | |
| Respondent | : | |

BEFORE: HONORABLE P. KEVIN BROBSON, President Judge
HONORABLE MARY HANNAH LEAVITT, Judge
HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                FILED: December 29, 2021

Eric P. Manson (Claimant) petitions for review from the June 5, 2020 order (Order) of the Workers' Compensation Appeal Board (Board), which affirmed the workers' compensation judge's (WCJ) July 29, 2019 decision and order denying Claimant's Claim Petition for workers' compensation benefits (Claim Petition) filed against Konica Minolta Business Solutions U.S.A., Inc. (Employer). For the reasons that follow, we affirm the Order of the Board.

## I. Background and Procedural History

Claimant, a technical specialist who traveled to Employer's clients' locations to maintain and repair printers and networks, alleged that he sustained

work-related, cervical and lumbar disc injuries as a result of falling backwards while descending a flight of steps on December 4, 2017.

Claimant filed his Claim Petition on February 21, 2018, and on March 5, 2018, Employer filed an Answer to the Claim Petition, denying the material averments raised therein. The matter was assigned to the WCJ who held hearings, accepted evidence, and issued a Decision and Order, including Findings of Fact (F.F.) and Conclusions of Law, on July 29, 2019.

## II. The WCJ's Decision and Order

The WCJ made the following Findings regarding Claimant's testimony. On December 4, 2017, Claimant was hurrying to meet a client after parking his car and slipped on steps in a parking garage. F.F. 1.b. After falling, Claimant experienced pain in his head and right elbow but continued to see his client and finished his shift for the day. *Id.* Claimant noted that he experienced a headache and soreness but took Tylenol and Motrin and continued working until December 18, 2017. *Id.* On December 18, 2017, Claimant could not feel his feet and legs and went to Nazareth Hospital. F.F. 1.c. Claimant also experienced dizziness and chest pain, and his hands, shoulder, and neck "locked up." *Id.* He was transferred to Lourdes Hospital and underwent emergency surgery on his neck on December 19, 2017. *Id.* He was hospitalized for one week and has not returned to work. *Id.*

Claimant treats with Richard Ratner, M.D., and continues to experience neck pain. He loses sensation in his feet and has had lower back tightness. In addition, he has experienced numbness in his legs and right hand. F.F. 1.e. Claimant cannot return to work without restrictions because he continues to have difficulty moving, and his job is physical in nature. *Id.* Claimant appeared

2

at a March 19, 2018 hearing before the WCJ wearing a neck brace and using a cane provided by Lourdes Hospital.  F.F. 1.f.  Claimant also uses a quad cane that was recommended by his physical therapist.  *Id.*  During the 1990s, Claimant underwent right knee surgery and was out of work for four or five months.  F.F. 1.g.

Claimant presented the deposition testimony of Dr. Ratner.  Dr. Ratner testified that he has been Claimant's primary physician since 2005.  F.F. 2.a.  Dr. Ratner's December 27, 2017 report does not note a date for Claimant's fall down the steps, and the doctor had no records of the fall or Claimant's cervical fusion surgery.  F.F. 2.b.  Claimant was one-week post-op, as of December 27, 2017, and Dr. Ratner prescribed five days of Tramadol for Claimant's pain and advised Claimant to follow-up with his neurosurgeon.  *Id.*

The WCJ found that Dr. Ratner testified to not knowing the cause of Claimant's symptoms but that the symptoms "could be caused by the type of injury [] somebody would have [from] falling down steps and striking [his] head . . . ."  F.F. 2.e.  The WCJ found that Dr. Ratner also testified to Claimant "probably" having "some preexisting arthritis" and "some abnormal anatomy."  *Id.*  The WCJ found that Dr. Ratner's understanding of the mechanics of Claimant's injury was that Claimant fell down steps.  However, Dr. Ratner did not know whether Claimant was at work or whether Claimant received treatment that day or whether he first received treatment on December 18, 2017. F.F. 2.i.  Further, Dr. Ratner did not know whether Claimant had been out of work since December 18, 2017.  *Id.* The WCJ found that when Claimant presented at Nazareth Hospital, on December 18, 2017, he reported hurting his right elbow and right knee at the time of his fall. F.F. 2.j.  The WCJ found "[t]here was no head or neck trauma," which is different

3

than Dr. Ratner's discussion of the mechanism of Claimant's injury. *Id*. The WCJ found that a neurologic consult note from Nazareth Hospital indicated Claimant reported falling again about a week and a half after the December 4, 2017 fall but that Claimant did not report this subsequent fall to Dr. Ratner. F.F. 2.k. The WCJ found that Dr. Ratner was not sure if Claimant's second fall had caused additional symptoms. F.F. 2.n.

Employer presented the deposition testimony of Richard Alongi who, at the time, had worked for Employer for 31 years, 22 of which were as a senior branch service manager. F.F. 3.a. Mr. Alongi was Claimant's immediate supervisor in December 2017. F.F. 3.b. The WCJ stated that Mr. Alongi testified to first learning of Claimant's injury when Claimant called to report he was off work on December 18, 2017. F.F. 3.h. On December 19, 2017, Claimant's wife called to explain that Claimant was in the hospital for emergency surgery. *Id*. The next day, Mr. Alongi spoke with Claimant who informed him that he had been hurt on December 4, 2017, in the parking garage, prior to beginning his shift. *Id*.

The WCJ found Claimant to be credible with respect to the December 4, 2017 incident, his job duties, and the requirement that he park in the parking garage in which he fell on December 4, 2017. F.F. 6. However, to the extent Claimant related his cervical spine surgery and subsequent disability to his work injury, the WCJ rejected Claimant's testimony as neither credible nor competent, as it was not consistent with the emergency room and hospital records from December 18-19, 2017, "or with Claimant's ability to continue his pre-injury job without restriction or [his] medical treatment for several weeks following the December 4, 2017 incident." *Id*.

4

The WCJ found Mr. Alongi's testimony to be credible. F.F. 7. However, the WCJ did not find Dr. Ratner's testimony to be competent or credible with respect to Claimant's cervical surgery and ongoing complaints. F.F. 8. The WCJ stated that "Dr. Ratner's testimony is equivocal and [] not competent to support a finding of causation and ongoing disability." *Id.* The WCJ found that Dr. Ratner had no knowledge of the mechanism of the alleged work injury, other than that Claimant fell down steps, and that he had no knowledge of Claimant's job requirements or the medical treatment Claimant received for his alleged work injury. *Id.* The WCJ stated:

> Most importantly, although he testified that Claimant's surgery and cervical radiculopathy and myelopathy were related to the alleged injury, he did not know the specifics of the injury, was not qualified to discuss the details of the surgery, had not seen an [electromyography] [(]EMG[)], and indicated that Claimant needs "another opinion and more studies to really say what is going on."

*Id.* The WCJ determined that "Claimant failed to meet his burden of proving, by competent and credible medical evidence, that he sustained a disabling injury on December 4, 2017[, which] required cervical surgery where Claimant continued to work his regular job." F.F. 10. Thus, the WCJ denied Claimant's Claim Petition, and Claimant subsequently appealed to the Board.

### III. The Board's Opinion and Order

The Board affirmed the determination of the WCJ. The Board agreed with the WCJ that Claimant's medical evidence was equivocal and incompetent to support his claim of a disabling work injury. The Board stated that "[a] medical opinion which is replete with contradictions and indicates that the work incident 'could have' caused the injury is equivocal and incompetent to satisfy [C]laimant's burden." Board Op., 6/5/2020, at 8. The Board further noted that "Dr. Ratner

5

indicated that not only were further studies required, but a second opinion was needed to nail down the exact nature and cause of Claimant's symptoms." *Id*. In addition, the Board stated that "Dr. Ratner admitted to not knowing that Claimant had sustained a second fall shortly after the first fall, which caused symptoms" and that Dr. Ratner's testimony revealed that he "was not aware of the details of the incident or the relevant surrounding history, including a second fall, which caused numbness and tingling into Claimant's extremities." Board Op., 6/5/2020, at 10-11. The Board added:

> The fact that Dr. Ratner was unaware of these pertinent facts, demonstrates that [he] did not have a complete understanding of Claimant's mechanism of injury or the factual circumstances of Claimant's incident and surrounding history. Moreover, his use of the words "may" and "could have" constitute a [sic] less than positive testimony as to the cause [of the injury] and [the] injury itself.

Board Op., 6/5/2020, at 11. The Board concluded: "Since Claimant presented equivocal medical testimony in support of his Claim Petition, he was unable to meet his burden of proof." *Id*. Thus, the Board opined that "the WCJ properly denied and dismissed the Claim Petition." *Id*. Accordingly, Claimant now petitions this Court for review of the Board's Order.[1]

---

[1] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830 (Pa. 2013). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Phila. v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

## IV.  Arguments

### A.  Claimant's Arguments

Claimant argues that the Board erred by affirming the WCJ's denial of his Claim Petition where "the WCJ completely ignored the fact that [] Employer failed to submit any medical evidence in opposition to the Claim Petition" and "ignored the documentary evidence that was submitted by [] Claimant that clearly supported the findings and testimony of his medical expert, Dr. Ratner." Claimant's Br. at 12.

Claimant contends that the WCJ's determinations were based on "mischaracterizations and inaccuracies in the findings of fact and credibility determinations." Claimant's Br. at 19. Although "Claimant acknowledges that it is generally improper to question such aspects of a decision on appeal . . . this case presents an instance where the shortcomings of the decision led to . . . a denial that is not warranted." *Id*. Claimant adds that Dr. Ratner's opinions are "particularly credible and persuasive in light of [] Employer's failure to submit any medical evidence in opposition." Claimant's Br. at 20.

Further, Claimant argues that he established an obvious injury caused by his fall at work and that, in this regard, his testimony alone was sufficient to meet his burden of proof. Claimant's Br. at 21 (citing *Calcara v. Workers' Comp. Appeal Bd. (St. Joseph Hosp.),* 706 A.2d 1286, 1289 (Pa. Cmwlth. 1998) (where "the causal connection is so clear that a lay person can see the connection . . . . the claimant's testimony is sufficient to connect the injury to the claimant's employment, and additional medical testimony is not required")). Thus, Claimant seeks a reversal of the Board's Order which affirmed the WCJ.

7

## B. Employer's Arguments

Citing *Fotta v. Workmen's Compensation Appeal Board (USX Corp.)*, 626 A.2d 1144 (Pa. 1993), Employer argues that "where a claimant suffers a preexisting condition or where there are non-work[-]related factors affecting the claimant's condition, the claimant is required to produce an unequivocal medical opinion supporting causation." Employer's Br. at 9. Employer further argues that Claimant, here, failed to provide competent or credible medical testimony to support his alleged December 4, 2017 disabling work injury and that the record establishes Claimant fell on two occasions, one of which occurred on December 18, 2017, and that he did not report the second fall to Dr. Ratner. Employer argues that "Dr. Ratner was admittedly '**not sure**' if the second fall caused additional symptoms or necessitated surgery" and that "Claimant presented no evidence [] regarding the extent to which each fall contributed to his alleged medical condition and alleged disability." Employer's Br. at 10 (emphasis in original). Employer cites *Long v. Workers' Compensation Appeal Board (Integrated Health Service, Inc.)*, 852 A.2d 424 (Pa. Cmwlth. 2004), for the proposition that "[a] medical opinion that is rendered where the expert does not have a complete grasp of the medical history and/or injury occurrence can render the expert's opinion incompetent." Employer's Br. at 14. Employer adds that "[m]edical testimony that is premised upon an inaccurate history is incompetent." Employer's Br. at 14-15 (citing *Newcomer v. Workmen's Comp. Appeal Bd. (Ward Trucking Corp.)*, 692 A.2d 1062 (Pa. 1997)).

Employer argues that Dr. Ratner is a family practitioner, not an orthopedic surgeon or neurosurgeon, and that he "made it clear that he was 'in no way[,] shape[,] or form' Claimant's treating physician for the alleged work injury

8

and that he had no idea what was going on with Claimant." Employer's Br. at 16 (citing Reproduced Record (R.R.) at 100a-02a, and 112a). Employer notes that Dr. Ratner testified that "it was beyond his expertise to opine whether Claimant's first or second fall necessitated the cervical surgery," stating "'[y]ou are beyond my areas of expertise. I can't answer that.'" Employer's Br. at 17-18 (citing R.R. at 123a-24a).

Further, Employer notes that the Board did not accept Claimant's contention that the WCJ "capriciously disregarded Dr. Ratner's testimony as [the] WCJ thoroughly summarized the same and 'painstakingly explained why she deemed it not competent.'" Employer's Br. at 23 (citing R.R. at 8a, 25a).

Thus, Employer asks this Court to affirm the Board's Order affirming the WCJ's denial of Claimant's Claim Petition.

### V. Discussion

"[T]he burden of proof in a claim petition rests on the claimant to demonstrate not only that he has sustained a compensable injury but also that the injury continues to cause disability throughout the pendency of the claim petition . . . ." *Innovative Spaces v. Workmen's Comp. Appeal Bd. (DeAngelis)*, 646 A.2d 51, 54 (Pa. Cmwlth. 1994). "Generally, if there is no obvious relationship between the disability and the work-related cause, unequivocal medical testimony is required to meet the burden of proof." *Odd Fellow's Home of Pa. v. Workmen's Comp. Appeal Bd. (Cook)*, 601 A.2d 465, 467 (Pa. Cmwlth. 1991).

> An obvious injury is one "which immediately manifests itself while [the c]laimant is in the act of doing the kind of heavy work which can cause such an injury."
>
> A classic example would be the laborer who grabs his back in pain after lifting his shovel full with wet concrete. In such a case, the causal connection is so clear that a lay person can see the connection.

> Under those circumstances, the claimant's testimony is sufficient to connect the injury to the claimant's employment, and additional medical testimony is not required.

*Calcara*, 706 A.2d at 1289 (quoting, in part, *Davis v. Workmen's Comp. Appeal Bd. (United Parcel Serv.)*, 499 A.2d 703, 705 (Pa. Cmwlth. 1985)).

Here, Claimant's medical expert, Dr. Ratner, offered equivocal testimony. The WCJ found that Dr. Ratner was not aware of Claimant's second fall and was not sure whether the second fall caused Claimant to experience additional symptoms or require surgery. R.R. at 122a-23a. Dr. Ratner testified that it was "beyond [his] area of expertise" to opine whether Claimant's first or second fall created the need for Claimant's surgery. R.R. at 123a-24a. In addition, the WCJ found that Dr. Ratner testified to not knowing the cause of Claimant's symptoms but that they "*could be* caused by the type of injury [] somebody would have [from] falling down steps and striking [his] head . . . " and that Claimant "*probably*" had some preexisting arthritis and abnormal anatomy. F.F. 2.e. (emphasis added). As our Supreme Court has made clear, "[s]tatements that an assigned cause 'could have' been the cause of the condition have repeatedly been held to be legally insufficient." *Lewis v. Commonwealth*, 498 A.2d 800, 803 (Pa. 1985) (internal citation omitted).

Further, to the extent Claimant suggests that the absence of medical evidence from Employer should be considered in the outcome of the present matter, we disagree. Claimant bears the burden of proof on the Claim Petition and absent an obvious injury, part of that burden includes establishing causation, an injury, and continuing disability through unequivocal medical evidence.

As to Claimant's argument that his injury was obvious and did not require medical testimony, again we disagree. In the instant case, Claimant

10

continued to work for some time after his alleged work injury. In addition, Claimant experienced another fall after the initial incident on December 4, 2017, and there was at least some uncertainty about whether Claimant had preexisting arthritis and/or abnormal anatomy and how that, or those, may have caused, or factored into, his condition and need for surgery. Each of these factors tend to detract from Claimant's assertion that the December 4 incident was so obviously the cause of his alleged work injury that a lay person could see the connection. In these regards, Claimant's injury was not analogous to the classic example of the obvious injury that this Court addressed in *Odd Fellow's Home of Pennsylvania*. Here, Claimant required unequivocal medical evidence to substantiate his claim, and as we addressed above, he did not present it.

## VI. Conclusion

Per the foregoing analysis, we conclude that Claimant did not meet his burden of proof on the Claim Petition. Thus, we affirm the Board's Order affirming the Decision and Order of the WCJ that denied the Claim Petition.

_____
J. ANDREW CROMPTON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric P. Manson,                                    :
                   Petitioner        :
                                :
               v.                     : No.  604 C.D. 2020
                                :
Konica Minolta Business                 :
Solutions U.S.A., Inc.                        :
(Workers' Compensation Appeal Board),  :
                   Respondent       :

# **O R D E R**

      **AND NOW**, this 29th day of December 2021, the June 5, 2020 Order of the Workers' Compensation Appeal Board is **AFFIRMED**.


                                         _____
                                         J. ANDREW CROMPTON, Judge