IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ralph Martin Construction and : 
Lackawanna American Insurance : 
Company, : 
                Petitioners : 
  : 
           v. :     No. 341 C.D. 2021
  :     Argued: June 23, 2022
Miguel Castaneda-Escobar : 
(Workers' Compensation Appeal : 
Board), : 
                Respondent : 

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT              FILED: August 1, 2022

          Ralph Martin Construction and Lackawanna American Insurance Company (collectively, Employer) petition for review of an adjudication of the Workers' Compensation Appeal Board (Board) that ordered Employer to contribute to the cost of a new home that was purchased by Miguel Castaneda-Escobar (Claimant). Our courts have interpreted the Workers' Compensation Act (Act)[1] to require an employer to modify a claimant's home to accommodate a wheelchair, if necessitated by a work injury. Because the modification to the house where Claimant resided at the time of his injury was projected to cost $119,722.21, the Board held that Employer was required to contribute that amount towards Claimant's purchase of a one-story home that required few modifications. Concluding that the Board exceeded its statutory authority, we reverse this part of its adjudication. However, we affirm the Board's holding that Employer was not

---

[1]Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

liable for the real estate closing costs Claimant incurred in the purchase of his home.

On May 12, 2010, Claimant, who was employed in construction, fell off a roof and injured his cervical spine, thereby rendering him a paraplegic. Board Adjudication, 3/1/2021, at 1; Reproduced Record 27a (R.R. __). Employer accepted liability for the injury in a Notice of Compensation Payable. At the time of his injury, Claimant resided in his brother's rowhouse in Reading, Pennsylvania (Reading Home), where the bedrooms and bathroom are located on the second floor. To accommodate Claimant, the living room was temporarily converted into his living quarters, where he was confined.

In 2011, a design and construction firm estimated that it would cost $119,722.21 to modify the Reading Home with the construction of a first-floor addition that included a new bedroom and bathroom. The firm estimated that the renovations would take 16 weeks to complete and require the occupants to vacate during construction. It observed that it might be more cost effective for Claimant to relocate to a single-floor residence with wheelchair accessibility.

In 2013, Employer retained a consultant to evaluate appropriate modifications to the Reading Home. In its report, Employer's consultant stated as follows:

> Upon completion of this onsite home assessment, I have determined that due to the age and overall condition of the home, although it can be modified, you will most likely come across structural, mechanical and code issues once work begins. It is then a decision of is it reasonable and cost effective to modify this structure[,] or [to] consider other housing options. Modifying this structure also may not be the best long[-]term solution for [Claimant] due to the fact that he does not own the home, the unknown duration of his stay in this home and the limited options for modifications.

2

R.R. 43a. Modifications to the Reading Home were never done.

On November 16, 2018, Claimant bought a home for $230,000 in Leesport, Pennsylvania (Leesport Home), for which he incurred closing costs of $4,158. The Leesport Home accommodates Claimant's needs with a first-floor master bedroom and bathroom; however, the shower in the master bathroom had to be modified to provide wheelchair accessibility. Employer reimbursed Claimant for the $5,905.04 Claimant spent to modify this bathroom.

On January 31, 2019, Employer filed a Petition to Review Medical Treatment and/or Billing (Medical Review Petition). Employer asserted that Claimant's purchase of the Leesport Home was not a reimbursable medical expense under Section 306(f.1)(1)(ii) of the Act.[2]

The evidence presented to the Workers' Compensation Judge (WCJ) consisted exclusively of documentary evidence, including the settlement documents for the Leesport Home and the reports from consultants regarding the home modifications necessary to accommodate Claimant's needs. No witnesses testified.

In addition to the above-described reports obtained by Claimant and Employer, Claimant offered a report of April 15, 2019, from the Center for Independent Living of Central Pennsylvania (Center). The Center concluded that Claimant's purchase of the Leesport Home created value for Employer. It explained that "[t]he rear entry [v]ertical [p]latform [l]ift, sidewalk, bedroom, and new bathroom, and other modifications" to the Reading Home were not required at

---

[2]Section 306(f.1)(1)(ii) of the Act states, in pertinent part, that "the employer shall provide payment for medicines and supplies, hospital treatment, services and supplies and orthopedic appliances, and prostheses in accordance with this section." 77 P.S. §531(1)(ii).

the Leesport Home. R.R. 45a. It concluded that Claimant's purchase of the new home eliminated "the need for the entire renovation cost or $119,722.21." *Id.* (emphasis in original omitted). In addition, the Center observed that the Leesport Home allowed Claimant "to have access to his whole home, living room, kitchen, bathroom, bedroom, and outdoor space. He can live independently . . . ." *Id.*

The WCJ concluded that Employer was not liable to reimburse Claimant for his purchase of the Leesport Home or for the estimated cost to renovate the Reading Home. However, the WCJ held Employer liable for the closing costs incurred in Claimant's purchase of the Leesport Home for the stated reason that Claimant's home purchase relieved Employer of the obligation to modify the Reading Home. Because Claimant prevailed, in part, the WCJ also ordered Employer to pay $5,067 for Claimant's litigation costs.

Both Claimant and Employer appealed to the Board. Noting that the relevant facts were not in dispute, the Board observed that "the parties have requested review of a novel legal issue." Board Adjudication, 3/1/2021, at 1. Specifically, the Board explained that Pennsylvania courts have required employers to pay for the purchase of a wheelchair-accessible van, but they have not required employers to pay for the purchase of a new home. Citing *Griffiths v. Workers' Compensation Appeal Board (Seven Stars Farm, Inc*.), 943 A.2d 242 (Pa. 2008), the Board concluded that Claimant's purchase of the Leesport Home to accommodate his physical limitations did not relieve Employer of its obligation to renovate the Reading Home. Board Adjudication, 3/1/2021, at 8-9. Accordingly, the Board reversed the WCJ's decision on this point and ordered Employer to pay the cost of that renovation, with a credit for the $5,905.04 it had already paid for the bathroom renovation in the Leesport Home. It ordered Employer to pay $113,817.17 and, thus, affirmed the WCJ's award of litigation costs to Claimant.

4

Employer petitioned this Court for review.[3]

On appeal, Employer raises two issues. First, it argues that the Board erred in requiring Employer to pay for home modifications that were never done. Second, it argues that the Board erred by making Employer liable for Claimant's litigation costs because Claimant should not have prevailed, even in part.

In response, Claimant argues that the Board's adjudication is consistent with *Griffiths*, 943 A.2d 242, and with the humanitarian purposes of the Act. Accordingly, the Board did not err by holding Employer responsible for a portion of the purchase price of the Leesport Home, which accommodates Claimant's physical restrictions caused by his work injury.

We begin with a review of the applicable legal principles. The Board based its order on Section 306(f.1)(1)(ii) of the Act, which states, in relevant part, as follows:

> [T]he employer shall provide payment for medicine and supplies, hospital treatment, services and supplies and orthopedic appliances, and prostheses in accordance with this section.

77 P.S. §531(1)(ii). As has been held, the "Act is remedial in nature and intended to benefit the worker, and therefore [] must be liberally construed to effectuate its humanitarian objectives." *Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.)*, 834 A.2d 524, 528 (Pa. 2003) (quoting *Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency)*, 597 A.2d 1116, 1120 (Pa.

---

[3]Our review determines whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap)*, 81 A.3d 830, 838 (Pa. 2013). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Philadelphia v. Workers' Compensation Appeal Board (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

5

1991)).  Consistent with this principle, the term "orthopedic appliances" has been construed to cover the acquisition of vehicles and the construction of home modifications, where necessary to allow the claimant to use the orthopedic appliances and prostheses.  *Rieger v. Workmen's Compensation Appeal Board (Barnes & Tucker Co.)*, 521 A.2d 84, 86 (Pa. Cmwlth. 1987).

In its first issue, Employer acknowledges that Section 306(f.1)(1)(ii) of the Act requires it to pay for Claimant's medicine, hospital treatment, services, supplies, and orthopedic appliances and prostheses, and this obligation includes home modifications.  However, Employer argues that "[t]here is not a single Pennsylvania case that requires an [e]mployer to purchase a home or contribute to the purchase of a home . . . ."  Employer Brief at 14.  Rather, the cases have held an employer liable only for the cost of a one-time, minor home modification and the maintenance of the modification where negligently performed, so that the injured worker can use an orthopedic appliance such as a wheelchair.  *Rieger*, 521 A.2d at 86-87.  A home modification, Employer argues, is limited in scope.  In *Bomboy v. Workmen's Compensation Appeal Board (South Erie Heating Co.)*, 572 A.2d 248, 250 (Pa. Cmwlth. 1990), this Court held that the employer was not required to install a wheelchair lift to a garage after it had previously installed a wheelchair-accessible bedroom and bathroom.  Employer argues that an orthopedic appliance cannot be construed to include the acquisition of an entire house.  Finally, Employer maintains it has fulfilled its statutory obligation by paying for Claimant's new roll-in shower, and it has not been presented with any other invoices related to the modification of Claimant's present home.

Employer challenges the Board's reliance on *Griffiths*, wherein the Supreme Court reasoned as follows:

> *Depending upon the circumstances of the individual, a van*

6

(indeed any vehicle) *could be viewed as a necessity, a luxury, or something in between.* What matters here is that appellant does not seek the modified van at issue as a 'lifestyle choice,' or for the reasons other people might purchase a van or a sport utility vehicle. For appellant, the need for the modified van is a direct result of his work injury and, in his circumstances at least, it directly addresses the lack of mobility caused by that work injury.

943 A.2d at 255 (emphasis added). Stated otherwise, the Supreme Court did not hold that every vehicle purchase meets the definition of orthopedic appliance. Further, the Supreme Court described an appliance as a device for performing a specific task, especially one that works "mechanically or by electricity." *Id.* (citation omitted). A home's principal purpose is to provide shelter and, thus, does not meet the "specific task" description set forth in *Griffiths*.

In its adjudication, the Board quoted from *Griffiths* as follows:

"The Act is remedial, but it does not authorize windfalls. As some of our sister states have recognized, the extent of an employer's liability may and should vary depending on the particular circumstances affecting the claimant. Nothing in the Act, for example, requires that an orthopedic appliance – the van here – be brand new. In addition, the claimant's prior lifestyle and resources may be relevant in fixing the appropriate expense owed by the employer to secure an appropriate vehicle. Thus, the circumstances of a claimant who already owned a van prior to his injury will be different from the circumstances of a claimant who owned a smaller vehicle not suitable for wheelchair-accessible modification (but perhaps suitable for trading-in to offset the cost of a van), or a claimant who owned no car at all, but relied upon walking, public transportation or other means of travel . . . . [T]*he particular circumstances of the claimant must be considered in determining the precise obligation of the employer*."

Board Adjudication, 3/1/2021, at 8 (quoting *Griffiths*, 943 A.2d at 257) (emphasis in original). Employer contends that the Board's holding cannot be reconciled

7

with the Supreme Court's caution that claimants are not entitled to "windfalls" in connection with their right to orthopedic appliances. 943 A.2d at 257.

Claimant did not testify to explain his decision to purchase a home, which, apparently, was facilitated by Claimant's third-party settlements that totaled at least $6 million. Notably, Claimant abandoned his original claim that Employer should pay the entire cost of his new home and, instead, sought an award of $119,722.21, *i.e.*, the cost to modify the Reading Home. Employer rejoins as follows:

> *However, Claimant did not have that home modified nor did he present any proof that he requested a modification of that home*. Why Claimant elected not to modify the Reading [H]ome or why he elected to move to Leesport is simply not part of the record. Claimant did not testify.
>
> What is part of the record is that Claimant purchased a home that cost in excess of $230,000.00 after he received millions of dollars from a [t]hird[-p]arty [s]ettlement. When he made the renovations to his newly purchased home consisting of renovations to the bathroom to accommodate his disability[,] [] Employer promptly fulfilled its obligation to pay for the modification. *The fact that Claimant spent less to modify his new home than it would have cost to modify his prior residence does not make the new home an orthopedic appliance. The fact that Claimant eliminated an expense that was never incurred by purchasing the new home is not the equivalent of modifying* the home.

Employer Brief at 18-19 (emphasis added). We agree. The purchase of a new home extends the phrase "orthopedic appliances," Section 306(f.1)(1)(ii) of the Act, 77 P.S. §531(1)(ii), beyond a reasonable construction.

As our Supreme Court explained in *Griffiths*, "the particular circumstances of the claimant must be considered in determining the precise obligation of the employer." *Griffiths*, 943 A.2d at 257. This is the key to the

8

present matter. At the time of injury, Claimant resided in the Reading Home, which required modifications projected to cost $119,722.21. Before any work was done, Claimant purchased the Leesport Home. Nonetheless, Claimant continues to seek "reimbursement" of the $119,722.21 that was never spent on the Reading Home.

Claimant's wheelchair is assuredly an orthopedic appliance, and our precedent has established that home modifications to make the wheelchair useful to Claimant are Employer's responsibility. *Rieger,* 521 A.2d at 87. However, there is no precedent under the Act that has established that an employer can be held liable to purchase an entire house for a claimant or to pay for modifications that were never undertaken.

> We have explained the rationale for a home modification as follows:
>
> *[I]f a wheelchair is necessary, then it logically follows that minor modifications needed to facilitate the use of the appliance must also be considered a necessity.*
>
> . . . . It is this Court's opinion that the intent of the Act is not that a claimant be forced either to rely upon the charity of his family and friends or to rely upon hired assistance in order to perform those daily tasks, duties, and business that he was previously able to perform, *when a simple, inexpensive remedy is available at hand.* If the claimant's injuries make it impossible to leave his home, the remedial nature of the Act *would be* frustrated by a failure to provide a one-time expenditure.

*Id*. (emphasis added). Here, there is no record evidence to support a finding that Claimant needed to own his own home in order to facilitate the use of his wheelchair, and a new home cannot be considered an "inexpensive remedy." *Id.*

On the other hand, a structural renovation to Claimant's Leesport Home was a necessity, and Employer promptly paid for the shower modification in

9

Claimant's bathroom. This is not in dispute, and there is no evidence that Claimant has presented Employer with any additional invoices for renovations to the Leesport Home.

Claimant's consultants determined that $119,722.21 was required to remodel the Reading Home to make it accessible for Claimant, but this amount did not become Claimant's baseline entitlement, as suggested by the Board. Further, unlike in *Rieger* and *Griffiths*, where the claimants sought reimbursement for costs after they were incurred, Claimant did not incur any costs to modify the Reading Home. Nor was the estimate of $119,722.21 adjudicated as reasonable. Notably, the Reading Home had unique challenges due to its age and construction that contributed to the estimated cost of $119,722.21. Employer's consultant wrote that the Reading Home was "generally, [] in disrepair" and that "an addition to the residence would be required with further modifications to the interior of the residence." R.R. 22a. The record is devoid of evidence of other alternatives to the modification of the Reading Home that may have been available, such as the rental of a one-story apartment or house.

Claimant purchased a home that was generally accessible to Claimant, with the exception of the bathroom. Employer paid for that modification, and this fulfilled Employer's obligation under Section 306(f.1)(1)(ii) of the Act as construed in *Rieger*, *Bomboy*, and *Griffiths*. If Claimant had not been willing, or not been able, to move from the Reading Home, some modification would have been required. The extent of that modification would have required a weighing of the remedial purposes of the Act against the need to avoid windfalls to Claimant. This analysis was never undertaken.

Without a wheelchair-accessible van, the claimant in *Griffiths* could not access the medical treatment needed to treat his work injury. This was

10

essential to the Supreme Court's rationale for ordering the employer to purchase a new van for the claimant. Even so, the Supreme Court observed that the claimant could be required to contribute to this purchase with, for example, the contribution of the trade-in value of his pre-injury vehicle. Here, there is no evidence that the purchase of a new house, as opposed to some other living arrangement, was essential to Claimant's medical treatment.

We hold that Section 306(f.1)(1)(ii) of the Act did not authorize the Board to order Employer to pay Claimant $113,817.17 for home modifications never done or to contribute to the purchase of a new home. We affirm the Board's holding that Employer was not liable for Claimant's closing costs for the Leesport Home, which the Board found untethered to the obligation in Section 306(f.1)(1)(ii) of the Act to provide an injured claimant with orthopedic appliances.

In its second issue, Employer argues that because Claimant cannot prevail in the present litigation, the award of litigation costs must be reversed. *Watson v. Workers' Compensation Appeal Board (Special People in Northeast)*, 949 A.2d 949, 955 (Pa. Cmwlth. 2008) (the claimant must prevail on a disputed issue to be entitled to litigation expenses). Under our determination, Claimant does not prevail on a disputed issue and, thus, is not entitled to reimbursement of his litigation costs.[4]

Based on the foregoing, we affirm the Board's decision to relieve Employer of liability for Claimant's closing costs for the purchase of the Leesport

---

[4] Claimant did not appeal the Board's disallowance of the closing costs on his new home.

Home.  We reverse the remainder of its adjudication, which ordered Employer to pay Claimant $113,817.17 in renovation costs and $5,067 in litigation costs.

_____

MARY HANNAH LEAVITT, President Judge Emerita

Judge Wallace did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ralph Martin Construction and :
Lackawanna American Insurance :
Company, :
     Petitioners :
 :
    v. : No. 341 C.D. 2021
 :
Miguel Castaneda-Escobar :
(Workers' Compensation Appeal :
Board), :
     Respondent :

## **O R D E R**

AND NOW, this 1ˢᵗ day of August, 2022, the March 1, 2021, adjudication of the Workers' Compensation Appeal Board (Board) in the above-captioned matter is AFFIRMED in part and REVERSED in part.

Specifically, the adjudication of the Board is affirmed insofar as it determines that Ralph Martin Construction and Lackawanna American Insurance Company are not required to reimburse Miguel Castaneda-Escobar for any of his closing costs. The remainder of the adjudication is reversed insofar as it requires Ralph Martin Construction and Lackawanna American Insurance Company to pay Miguel Castaneda-Escobar $113,817.17 in renovation costs and $5,067 in litigation costs.

_____
MARY HANNAH LEAVITT, President Judge Emerita